# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LIFEWORKS TECHNOLOGY GROUP LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FIRST DELTA GROUP, INC., ) <br> ) <br> Defendant. ) | Case No. 18 C 2996 <br><br> Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiff LifeWorks Technology Group LLC ("LifeWorks"), has brought this action for breach of fiduciary duty and breach of contract against Defendant First Delta Group, Inc. ("FDG"). FDG has filed a motion to enforce a purported settlement agreement between the parties and also has moved to dismiss LifeWorks's claims under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, FDG's motion to enforce settlement [62] is denied, and the motion to dismiss [52] is granted in part and denied in part.

**I.      FDG's Motion to Enforce Settlement**

**A.      Background**

Concurrent with this lawsuit against FDG, LifeWorks has pursued a related case against Walgreen Co. ("Walgreens"), 17 C 3217 (N.D. Ill.) ("the Walgreens Matter"). In January 2018, FDG's principal, Steve Winokur, met with Lifeworks's principals, Eddie Mizrahi and Amin Adjmi, at the 2018 Consumer Electronics Show ("CES") in Las Vegas, Nevada. *See* Def.'s Mot. Enforce Settlement ("Mot. Enforce") at 2–3, ECF No. 62; Pl.'s Resp. Opp. Mot. Enforce Settlement ("Resp. Opp. Mot. Enforce") at 2, ECF No. 77. Winokur, Mizrahi, and Adjmi

discussed a settlement of both the Walgreens Matter and this case. Resp. Opp. Mot. Enforce at 2; Mot. Enforce at 3. Winokur later emailed Mizrahi and Adjmi on January 30, 2018, stating:

> Will you please send me the email that Amin & I discussed on 1/26 stating Lifeworks will dismiss the lawsuit against First Delta Group with prejudice if my efforts help Lifeworks & Walgreens settle their suit for somewhere between $600,000 - $680,000?

Mot. Enforce, Ex. 4 ("the Winokur Email"), ECF No. 62-4.

Adjmi confirmed he would "send it tomorrow no problem." *Id.* The next day, Mizrahi emailed Winokur, copying Adjmi and stating:

> It was nice seeing you at CES.
>
> . . . .
>
> LW is OK with you helping to resolve the law suit with Walgreens and giving you permission to have your lawyer discuss a settlement with Walgreens lawyer and collaborate together.
>
> In the event there's an expeditious and mutually agreed upon settlement LW will drop the lawsuit against First Delta Group.

*Id.*, Ex. 6 at 2 ("the Mizrahi Email"), ECF No. 62-6.

Winokur responded by thanking Mizrahi and Adjmi. *Id.* at 1. Mizrahi followed up, stating, "Hopefully we can bring this to a resolve !!" *Id.* Winokur replied, "You can count on me doing my best!" *Id.*

The Walgreens Matter settled in October 2018 for $150,000, and LifeWorks's claims against Walgreens were dismissed with prejudice. Mot. Enforce at 6; Resp. Opp. Mot. Enforce at 4; Mizrahi Decl., Ex. 8, Settlement Agreement at 3, ECF No. 79-1. According to FDG, its prior communications with LifeWorks constitute an agreement, which LifeWorks has breached by not dismissing FDG from this lawsuit. Mot. Enforce at 6–7.

2

### B. Legal Standard

A district court has "the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). In determining whether the parties reached an enforceable settlement agreement, courts apply state contract law. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). Under Illinois law (which the parties agree governs here), an agreement is binding and enforceable where there has been an offer, acceptance, and a meeting of the minds as to all material terms. *Seko Worldwide, LLC v. Four Soft Ltd.*, 503 F. Supp. 2d 1059, 1060–61 (N.D. Ill. 2007) (discussing Illinois law).

Furthermore, "Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). But the agreement must be sufficiently definite with respect to all material terms. *Seko Worldwide, LLC*, 503 F. Supp. 2d at 1061. Material terms are sufficiently definite when they enable a court to ascertain that to which the parties agreed. *Beverly*, 817 F.3d at 333.

### C. Analysis

As FDG sees it, in his email to LifeWorks, Winokur offered FDG's assistance in LifeWorks's efforts to settle the Walgreens Matter for $600,000–$680,000, if LifeWorks would agree to dismiss this case with prejudice. In response, again according to FDG, Mizrahi of LifeWorks rejected Winokur's offer and provided a counteroffer to dismiss its claims against FDG if LifeWorks could reach an expeditious, mutually agreed settlement in the Walgreens Matter (without requiring that the settlement be for a particular amount). Winokur accepted that counteroffer, FDG argues, by thanking Mizrahi and Adjmi and stating that he would "do[] [his] best." Mot. Enforce, Ex. 6, at 1.

By contrast, LifeWorks argues that the email exchange between Winokur and Mizrahi merely memorialized the parties' prior verbal agreement that LifeWorks would dismiss this case if Winokur aided the parties in reaching a settlement of the Walgreens Matter for between $600,000 and $680,000. Because the settlement was for $150,000, contends LifeWorks, it is not obligated to dismiss this case.

Illinois courts recognize that "email exchanges can constitute a binding agreement." *Transp. Ins. Co. v. Island Food Stores, Ltd.*, No. 09-CV-7193, 2011 WL 209920, at *4 (N.D. Ill. Jan. 20, 2011) (citation and internal quotation marks omitted) (discussing Illinois law). But, here, the email exchange does not establish that the parties entered into an enforceable settlement agreement. *Seko Worldwide, LLC*, 503 F. Supp. 2d at 1060–61. FDG relies on the fact that the Mizrahi Email does not mention the $600,000–$680,000 range to argue that Mizrahi had "rejected" Winokur's "offer" requiring that range. But the Mizrahi Email is at best ambiguous; it could just as easily be read as an "acceptance" of the terms set forth in the Winokur Email.

FDG relies on *Seko Worldwide, LLC*, where another court in this district concluded that email exchanges between the parties formed an enforceable settlement agreement. *Id.* at 1061–62. But the emails in that case expressly set out the material terms of the settlement agreement. *Id.* at 1061. Here, by contrast, the emails between Winokur and Mizrahi fall far short of demonstrating that the parties had a meeting of the minds as to a material term—whether LifeWorks's settlement in the Walgreens Matter had to fall within the range of $600,000 to $680,000 in order to trigger its obligation to dismiss this case.[1] *See Wigod v. Wells Fargo Bank,*

---

[1] To support its argument that the settlement range was not part of the parties' agreement, FDG notes in its reply brief that LifeWorks's attorney sent an email to Walgreens's attorney stating that "if Walgreens and LifeWorks settle [for $500,000.00], the suit against First Delta will be dropped." But, whatever LifeWorks's internal calculus may have been, this email does nothing to show that LifeWorks believed that it was *obligated* to dismiss this case even if the settlement amount was less than $600,000.

4

*N.A.*, 673 F.3d 547, 564 (7th Cir. 2012); *Acad. Chi. Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991). Accordingly, FDG's motion to enforce settlement is denied, and we turn to its motion to dismiss.[2]

## II. FDG's Motion to Dismiss

### A. Background[3]

LifeWorks is a wholesaler and importer that manufactures and imports goods from Asia. 2d Am. Compl. ¶ 16, ECF No. 49. FDG is a manufacturer's representative and consultancy firm headquartered in Chicago, Illinois. *Id.* ¶ 17. LifeWorks and FDG entered into a Sales Representative Agreement ("SRA") no later than 2008. *Id.* ¶ 18. Under the agreement, FDG was engaged as an independent agent and consultant for LifeWorks in connection with a specified list of customers, which was amended from time to time. *Id.* ¶¶ 18–19.

FDG—in its capacity as LifeWorks's representative—owed to LifeWorks fiduciary and other duties. *Id.* ¶¶ 20–21. The parties agreed that FDG would represent LifeWorks by promoting its products, managing sales and margins to certain customers, communicating with customers and prospective customers on LifeWorks's behalf, receiving and transmitting purchase orders, and negotiating discounts. *Id.* ¶ 22.

Beginning in 2012, LifeWorks, through FDG, began a business relationship with Walgreens. *Id.* ¶ 23. Between 2012 and 2016, FDG assisted LifeWorks in selling to Walgreens consumer electronics worth $20,593,852.00. *Id.* ¶ 24. Although LifeWorks had regular contact

---

[2] Because the Court concludes that the material terms of the parties' email communications are not sufficiently definite, it does not address the arguments concerning FDG's conduct in this case, or whether the other terms proposed in the parties' emails were satisfied. Similarly, the Court does not reach the issue of whether the alleged settlement agreement encompassed FDG's counterclaims against LifeWorks.

[3] The following facts are taken from the amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

with Walgreens, Walgreens primarily communicated with FDG. *Id.* ¶ 25. FDG was in a "unique position of trust and confidence" with LifeWorks because of its role as agent and representative to "one of LifeWorks'[s] more valuable customers." *Id.* ¶¶ 26–27. Through FDG, LifeWorks formed a relationship with Walgreens's senior leadership and was able to "get[] . . . its consumer electronic products in front of the decision makers at Walgreens." *Id.* ¶¶ 28–29. LifeWorks relied on FDG to increase its sales through advertising, marketing, and product planning. *Id.* ¶¶ 30–32.

During this time, LifeWorks was aware that FDG was also representing another consumer-electronics provider ("the Third-Party Client"), who was engaged in selling products to "the same or similar departments or buyers at Walgreens." *Id.* ¶ 33. But according to LifeWorks, it was an implicit condition of FDG's representation of LifeWorks that FDG "maintain an absolute unconditional and undivided loyalty to LifeWorks in connection with the discrete group of products sold to Walgreens by LifeWorks." *Id.* ¶ 34. Furthermore, the parties understood that FDG would not disclose LifeWorks's confidential information or business strategy to the other seller. *Id.* ¶¶ 35–37.

Beginning in 2015, LifeWorks's relationship with Walgreens "went through a period of disruption" largely attributable to FDG's alleged failure to properly represent LifeWorks. *Id.* ¶ 38. The problems stemmed from "[FDG's] disastrous handling of the 2015 holiday program with Walgreens." *Id.* ¶ 39. FDG approved a holiday display for LifeWorks's products to be sold at Walgreens, but the display did not conform to Walgreens's specifications. *Id.* Additionally, FDG failed to convey to Walgreens LifeWorks's request for an "extended 'call-in' date." *Id.* FDG's principal, Steve Winokur, took responsibility for the errors, but it was "too little, too late." *Id.* ¶¶ 40–41. FDG "failed to advise Life[W]orks of material and relevant information" pertaining to Walgreens, and instead "shifted its loyalties to the Third Party Client and Walgreens, all at the

6

expense and to the detriment of LifeWorks." *Id.* ¶ 41. As a result, LifeWorks's business relationship with Walgreens ended. *Id.* ¶ 42.

Around the same time, FDG expanded the Third-Party Client's relationship with Walgreens, replacing LifeWorks's line of products in Walgreens stores with the Third-Party Client's products. *Id.* ¶ 43. Due to these efforts, the Third-Party Client became a "substantial and material supplier to Walgreens of the very products previously supplied to Walgreens by LifeWorks." *Id.* ¶ 44. Furthermore, beginning in 2017, FDG began supplying Walgreens with LifeWorks's confidential communications, "for the sole purpose of advancing and continuing [FDG's] relationship with Walgreens on its own behalf and on behalf of [its] other represented clients, including the Third-Party Client." *Id.* ¶¶ 48–49.

LifeWorks filed this lawsuit in October 2017 in New York state court. *See* Notice of Removal at 1, ECF No. 1. Approximately one month later, FDG removed the case to the United Stated District Court for the Southern District of New York. *Id.* The parties agreed to transfer the case to this Court in April 2018. *See* Stip. to Transfer, ECF No. 19.

> **B.** **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion."

7

*McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### C. Analysis

LifeWorks alleges that FDG breached its fiduciary duties to LifeWorks (Count I), 2d Am. Compl. ¶¶ 50–57, and that FDG breached the SRA (Count II), *id.* ¶¶ 58–71. FDG seeks dismissal of both claims under Rule 12(b)(6).

#### 1. Breach of Fiduciary Duty (Count I)

FDG argues that Count I must be dismissed because LifeWorks has not plausibly alleged that FDG was its fiduciary or that FDG breached any duty to LifeWorks. In addition, FDG seeks to strike with prejudice LifeWorks's prayer for attorneys' fees.

Accepting the allegations of LifeWorks's second amended complaint as true, and drawing all reasonable inferences in LifeWorks's favor, the Court concludes that LifeWorks has stated a plausible claim for breach of fiduciary duty. To state such a claim in Illinois, a plaintiff must plead: "(1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damages to the plaintiff as a result of that breach." *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 820 (N.D. Ill. 2014) (citing Illinois law). A fiduciary duty may arise as a matter of law due to the parties' relationship, such as between principal and agent. *See Ransom v. A.B. Dick Co.*, 682 N.E.2d 314, 321 (Ill. App. Ct. 1997); *see also Khan v. BDO Seidman, LLP*, 948 N.E.2d 132, 151–52 (Ill. App. Ct. 2011). It also may arise as a result of the "special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Ransom*, 682 N.E.2d at 321.

It is true that parties to a contract do not owe fiduciary duties to each other merely by virtue of the contract. *See Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992). But a fiduciary relationship may develop between contracting parties, depending on a number of factors, including "the degree of kinship between the parties; the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the 'servient' party entrusted the handling of its business affairs to the 'dominant' party and placed trust and confidence in the 'dominant' party." *In re Estate of Bontkowski*, 785 N.E.2d 126, 132 (Ill. App. Ct. 2003); *see also Benson v. Stafford*, 941 N.E.2d 386, 398 (Ill. App. Ct. 2010) ("The 'essence' of a fiduciary relationship is dominance of one party by the other.").

FDG contends that LifeWorks has not shown that FDG was its fiduciary. In making this argument, FDG assumes that LifeWorks must show that a "special relationship" existed between the parties. *See* Def.'s Mem. Supp. Mot. Dismiss ("Mot. Dismiss") at 9, ECF No. 52. But, in Illinois, a fiduciary relationship exists between principals and agents as a matter of law. *See Ransom*, 682 N.E.2d at 321. Here, LifeWorks alleges that it entered into an agency relationship with FDG that was governed by the SRA. 2d Am. Compl. ¶ 18.

In response, FDG argues that a fiduciary relationship "cannot simply be assumed" given that LifeWorks has not provided a copy of the SRA with its second amended complaint. Def.'s Reply Supp. Mot. Dismiss ("Reply Supp. Mot. Dismiss") at 9, ECF No. 59. But, while it is true that "pleading the existence of an agency relationship requires more than a general statement that such a relationship exists," *see Sefton v. Toyota Motor Sales U.S.A.*, No. 09 C 3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010), LifeWorks has done more than simply state that FDG was its agent. Specifically, LifeWorks alleges that FDG was granted authority to represent

9

LifeWorks by—among other things—promoting its products, managing its sales to certain customers, and negotiating on its behalf. 2d Am. Compl. ¶ 22. LifeWorks also states that it relied on FDG to increase the sales of its product, which FDG did, to the tune of over $20 million in sales to Walgreens alone. *Id.* ¶¶ 24, 29–32. These facts are sufficient, even without the written agreement itself, to allege a "factual predicate to create the inference of agency," *Frazier v. U.S. Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *4 (N.D. Ill. Mar. 29, 2013), because they demonstrate that FDG agreed to act on LifeWorks's behalf in its dealings with clients, including Walgreens. Accordingly, LifeWorks has plausibly alleged an agency relationship with FDG, and therefore, the existence of a fiduciary duty.

Next, FDG contends that LifeWorks fails to establish that FDG breached any duty it may have owed to LifeWorks, pointing to LifeWorks's allegation that it was aware of an existing relationship between FDG and the Third-Party Client at the time LifeWorks was working with FDG. *See* 2d Am. Compl. ¶ 33. FDG "could not have *shifted* loyalties" to the Third-Party Client, it argues, "when LifeWorks knew that FDG's 'loyalties' already existed elsewhere." Mot. Dismiss at 10. But, for the reasons discussed above, LifeWorks has plausibly alleged that FDG was acting as its agent in its dealings with Walgreens. And an agent is "subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." *Lyssenko v. Internal Titanium Powder, LLC*, No. 09 C 6678, 2010 WL 5317007, at *4 (N.D. Ill. Dec. 17, 2010) (internal citations omitted). Therefore, regardless of FDG's relationship with the Third-Party Client, when it entered into an agency relationship with LifeWorks, it undertook a duty to act solely for LifeWorks's benefit in its dealings with the customers as specified in the SRA. What is more, LifeWorks alleges, FDG arranged for the Third-Party Client's products to replace LifeWorks's products in Walgreens stores, failed to provide LifeWorks with material information

as to its dealings with Walgreens, and shared LifeWorks's confidential business-strategy information to advance the Third-Party Client's relationship with Walgreens. Accepting these allegations as true, the Court finds that LifeWorks has sufficiently alleged a breach of fiduciary duty.[4]

Furthermore, FDG contends that LifeWorks has failed to allege damages from FDG's breach of fiduciary duty. LifeWorks's second amended complaint seeks "compensatory and punitive damages . . . in the approximate sum of $10,000,000.00 . . . and for compensatory damages, together with interest, costs and attorneys' fees." 2d Am. Compl. ¶ 56. LifeWorks also "seeks that [FDG] disgorge and return all compensation and benefits conferred on [FDG] during the period of disloyalty and other costs and expenses of LifeWorks." *Id.* ¶ 57. According to FDG, these allegations are insufficiently "direct or specific," and that they are merely "conclusory." Reply Supp. Mot. Dismiss at 13. But FDG cites no authority for its position, and Rule 8 does not require plaintiffs to plead damages with particularity; rather, it requires only that plaintiffs include "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). Here, LifeWorks has alleged that its business relationship with Walgreens was severed as a result of FDG's actions, and that it paid FDG a commission for its services during a time when FDG was not acting in LifeWorks's interest. No further details are necessary at this stage of the litigation.

---

[4] FDG also argues that LifeWorks should be judicially estopped from arguing that FDG caused the termination of LifeWorks's relationship with Walgreens, because in the Walgreens Matter, LifeWorks alleged that the contracts with Walgreens were only between LifeWorks and Walgreens (not FDG). In determining whether to apply the doctrine of judicial estoppel, courts consider a number of factors, including whether a party's position in a later case is "clearly inconsistent" with its position in an earlier matter. *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013). At this stage, the Court cannot conclude that LifeWorks's allegations that FDG was acting on its behalf in its dealings with Walgreens are clearly inconsistent with its allegations in the Walgreens Matter. Accordingly, the Court declines to apply the doctrine of judicial estoppel on this record.

Finally, FDG asks the Court to strike LifeWorks's request for attorneys' fees. While motions to strike generally are disfavored, *see Heller Fin., Inc. v. Midwhey Powder Co. Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989), FDG contends that striking the prayer for attorneys' fees is appropriate here because, under Illinois law, "attorney fees are not available unless the parties have agreed to them or a statute provides for them." *In re Weinschneider*, 395 F.3d 401, 404 (7th Cir. 2005). Here, no statutory basis or contractual provision is identified in the complaint—a point that LifeWorks does not dispute in its response brief.

Because there appears to be no authority by which the Court could grant an award of attorneys' fees, the Court grants FDG's motion to the extent that LifeWorks's request for attorneys' fees in Count I is stricken. In all other respects, FDG's motion to dismiss LifeWorks's claim for breach of fiduciary duty (Count I) is denied.

### 2. Breach of Contract (Count II)

FDG also seeks dismissal of Count II, arguing that LifeWorks has failed to properly plead a breach-of-contract claim. But even a cursory reading of the complaint reveals the speciousness of this argument. To state a breach-of-contract claim under Illinois law, a plaintiff must allege: "'(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)).

At the outset, FDG argues, LifeWorks's allegation that it entered into a contract with FDG in 2008, *see* 2d Am. Compl. ¶ 18, is insufficient because LifeWorks "fails to allege *specific* terms of the agreement." Mot. Dismiss at 12. But the second amended complaint states that pursuant to the SRA, LifeWorks engaged FDG as its "agent and consultant . . . in connection with a specified

list of customers," in exchange for compensation. 2d Am. Compl. ¶¶ 18, 20. This is sufficient to allege that a contract existed between the parties. "[U]nder the liberal pleading standard of the federal rules, 'the plaintiff has considerable flexibility in pleading written and oral contracts.'" *Emmons v. Knox Capital Holdings, LLC*, No. 15 C 2999, 2015 WL 6123544, at *3 (N.D. Ill. Oct. 16, 2015) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1235, at 395 (3d ed. 2004)). Accordingly, under Rule 8, it is "sufficient merely to allege that a contract exists." *Id.* (quoting Wright & Miller, *Federal Practice and Procedure* § 1235, at 395).[5]

Next, FDG contends that LifeWorks has failed to allege that it substantially performed under the SRA. "Nowhere in the [second amended complaint] does LifeWorks specify how it performed," FDG argues, "[i]n fact, LifeWorks does not even allege that it paid FDG." Mot. Dismiss at 13. But LifeWorks states that it (1) "performed all parts of the SRA on LifeWorks['s] part to be performed," and (2) seeks the "return [of] all compensation and benefits conferred on First Delta during the period of disloyalty." 2d Am. Compl. ¶¶ 57, 61, 71. Taken together, these statements allege that LifeWorks performed under the SRA by paying certain compensation to FDG in exchange for FDG's representation of LifeWorks to certain customers.

Additionally, FDG argues that LifeWorks has failed to sufficiently allege that FDG breached any contract between the parties. But LifeWorks alleges that FDG breached the parties' agreement in various ways, such as by failing to assist LifeWorks in advertising and promoting its products, failing to provide LifeWorks with information material to its dealings with Walgreens, and disclosing LifeWorks's confidential business information. *See* 2d Am. Compl. ¶¶ 62–69. At this stage of the litigation, this is sufficient to allege a breach by FDG.

---

[5] The Court acknowledges that in responding to FDG's motion to dismiss, LifeWorks has attached various documents, including deposition testimony from Winokur. Consideration of such evidence is not proper at this stage, so the Court does not look to the contents of those exhibits.

Finally, FDG renews its argument that LifeWorks has failed to plead damages with specificity. For the reasons discussed in Section II.C.1, this argument also fails. LifeWorks's damages allegations are sufficient at this stage. That said, for the reasons discussed in Section II.C.1, FDG's motion to dismiss is granted to the extent that challenges LifeWorks's request for attorneys' fees in Count II. In all other respects, FDG's motion is denied as to Count II.[6]

## Conclusion

For the reasons stated herein, FDG's motion to enforce settlement is denied. In addition, FDG's motion to dismiss is granted insofar as LifeWorks's requests for attorneys' fees are stricken. In all other respects, the motion is denied. A status hearing is set for September 19, 2019 at 9:00 a.m.

**IT IS SO ORDERED.**                    ENTERED: 9/12/19

                                                                              **JOHN Z. LEE**
                                                                              **United States District Judge**

---

[6] FDG argues for the first time in its reply brief that Counts I and II are duplicative. But the claims are comprised of different elements—the fiduciary-duty claim requires the existence of a fiduciary duty, while the contract claim does not. Accordingly, LifeWorks may pursue both claims, although its potential recovery may be limited if it turns out that the damages sought for both counts are duplicative. *See Russell Dean, Inc. v. Maher*, No. 17 C 8440, 2018 WL 4679573, at *12 (N.D. Ill. Sept. 28, 2018); *Gritters v. Ocwen Loan Servicing, LLC*, No. 14 C 00916, 2014 WL 7451682, at *10 (N.D. Ill. Dec. 31, 2014).